Lee, J.
This is an action of ejectment upon the demise of George, Elizabeth and Julia English, originally instituted in the Circuit court of Franklin county, and thence transferred to the Circuit court of *237 Roanoke county. Upon a previous trial of the cause there was a verdict in favor of the plaintiff for the land in controversy, and a motion was made by the defendant for a new trial, upon the ground that the verdict was contrary to the evidence. This motion having been overruled, the defendant excepted to the opinion, setting out in his bill of exceptions, all the evidence on both sides, instead of stating the facts proved on the trial; and the court having rendered judgment upon the verdict in favor of the plaintiff, the case was brought to this court by a supersedeas. This court was of opinion that the Circuit court had erred in refusing the new trial, and accordingly the judgment was reversed, the verdict set aside and the case remanded to the Circuit court for a new trial to be had. The case will be found reported in the 5th volume of Grattan’s Reports, commencing at page 141.
In the j udgment of this court certified to the Circuit court, it was declared that the parol testimony of the plaintiff in error ought to be excluded from consideration ; but that notwithstanding such exclusion the defendants in error had failed to show that Gwin Dudley under whom they claimed, acquired title to the land in controversy from William Mead under whom the plaintiff in error claimed; and that they had also failed to show that they and those under whom they claimed, had at any time a sufficient adversary possession thereof to sustain their action; and therefore that the Circuit court had erred in refusing to grant to the plaintiff in error a new trial of the cause.
After the case went back to the Circuit court a new trial took place, upon which the defendants in error gave in evidence the deed from William Mead to Gwin Dudley, the will of Gwin Dudley and the deed from Gwin Dudley and wife and Lewis Dudley to the defendants in error; all of which had been read on the *238 former trial. They also gave the plat and certificate survey of the premises in controversy made by Bernard under an order of the court, in evi,jence) together with the parol testimony of witnesses substantially the same as that given upon the former trial. No material difference whatever, is perceived between the parol testimony introduced upon this occasion and that upon the former trial. A reason is assigned why Dudley bought the same land of Ryan which had been assigned him in the partition with Mead, which was not alluded to on the former trial ; and there was some proof that the line between the white oak at F and the pine had been marked several times; and one of the witnesses spoke of having seen aman, who .said he was processioning, go along part of said line; but there was'no proof of any notice of such processioning either to Mead or to the public. The defendants in error also gave some proof as to the course of the line of the deed from Mead to Dudley from the red oak at Gr and as to the growths of the timber over the marks upon that and other lines on the plat. But there was no other or additional testimony offered by them in support of 'the adversary possession claimed to have been taken and held by them of the land in controversy. Upon this material question the evidence given on the first trial on the -part of the defendants in error, was fully as strong, and in substance just the same as that given on this occasion. The plaintiff in error on his part deduced Ms title regularly from William Mead the common source, and gave evidence tending to prove that while the conveyances from Mead under which he claimed did embrace the land in controversy, that of the defendants in error derived from the common source, did not. He also gave evidence that Grwin Dudley the elder acknowledged the blazed line from the black oak at H to the red oak at I to be the division line between *239 himself and Mead, and that after the death of Gwin Dudley the elder, between the years 1830 and 1834, Gwin Dudley the younger, who then claimed the land under the will of Gwin Dudley senior, only claimed to the old blazed line HI, and did not claim any part of the land in controversy. And he gave other testimony strongly conflicting in some respects with that offered by the defendants in error, and tending to overthrow their pretensions. But in the view that I take of this case it is unnecessary to go into the details of the testimony on the part of the plaintiff in error, or to notice it further than to say that its tendency certainly was directly to impugn the title set up by the defendants in error, and to weaken the case of claim of title and adversary possession upon which they had necessarily to found themselves to recover in this action.
After the evidence had been closed the plaintiff in error moved the court to instruct the jury:
1st. That they must disregard all the parol evidence introduced by the defendants in error to prove their right to land not embraced within the boundaries of the deed from William Mead to Gwin Dudley for the two hundred acres of land, which they had given in evidence in support of their title.
2dly. That if they believed from the evidence that the boundaries of the deed from William Mead to Gwin Dudley did not include the land in controversy, and that the boundaries of the deed from Carper and wife to the plaintiff in error did include the land in controversy, they must find for the latter.
These instructions the court gave, but with the following modification, moved by the counsel for the defendants in error:
Unless the jury should be satisfied from the evidence that a division line was marked and agreed upon as the boundary between their lands by William Mead *240 and Gwin Dudley, under whom the parties claimed, respectively, and that the said Gwin Dudley had taken and held up to said line, and that he and those claiming under him had so held peaceable and uninterrupted possession up to said line, exercising open and notorious acts of ownership over the land on their side, including the land in controversy, for a period of twenty years and upwards before the bringing of this suit, and that the said William Mead and those claiming under him, had acquiesced in such their possession : in which event they ought to find for the plaintiff, (the defendant in error,) although they might be satisfied from the evidence that the deed under which Gwin Dudley and those claiming title under him asserted title, did not in fact cover or embrace the land in controversy: But at the same time instructed the jury that merely constructing saw pits would not amount to an adversary possession against William Mead and those claiming under him, sufficient to entitle the plaintiff to recover by force of an adversary possession.
To this modification of the instructions moved, by him the plaintiff in error excepted ; and a verdict and judgment having been rendered against him, he applied for and obtained a supersedeas from this court.
Passing by the criticism to which the modification appended by the court to the instructions might perhaps be justly obnoxious, that it does not expressly declare that the taking and holding possession of the land in controversy by Gwin Dudley and those claiming under him, must have been accompanied with claim of title to the same in order to give it the character of such an adversary possession as by its own force would enable the plaintiff in ejectment to recover upon it, let us examine it as if that idea had been distinctly embraced and presented by the terms employed. Of course the instructions and the modification appended *241 by the court are to be taken together and considered as a whole. Else the contradiction would be involved of telling the jury that they were to disregard all the parol evidence introduced by the plaintiffs in ejectment to prove their right to land not embraced in the deed from Mead to Grwin Dudley, and yet in the next breath telling them that if they believed certain things were established by that same testimony, they ought to find for the plaintiffs, notwithstanding they might be satisfied the deed under which they claimed title did not embrace the land in controversy. But considered as a whole, the necessary construction to be placed upon the instructions with the modification appended, is that the jury were to disregard all the parol testimony of right to land not embraced in the deed from Mead to Grwin Dudley, unless they should be satisfied from that same evidence that a division line had been run between Mead and Dudley, and that the latter and those claiming under him had taken and held possession accordingly for twenty years and upwards; in which latter event, if they should be so satisfied, then they were not to disregard the testimony, but ought to give it full weight and effect, and to find a verdict in favor of the plaintiffs upon it. But the court does not stop here; for it goes on to instruct the jury further that merely constructing saw pits on the land (which form of expression, I take it for granted, was intended to include the cutting and sawing of timber at those pits, proven by the witnesses upon both trials; for the court could not have intended to discriminate between those different supposed acts of ownership over the property, the same having been always proven in connection, and evidently considered by this court all together when it held that the defendants in error had failed to show a sufficient adversary possession upon the former trial to maintain their action,) would not amount to an adversary possession against William *242 Mead and those claiming under him, sufficient to entitle the plaintiffs in ejectment to recover by force of their adversary possession. Transposing the disjecta membra of the instructions and modification appended taken as a whole, and placing them in their simplest and most natural order, the sum and substance of the whole would seem to be this: That as this court had expressly decided that the evidence given on the former trial did not establish a sufficient adversary, possession to sustain the action, so the same evidence given upon the second trial without further and additional proofs, could not and did not establish such adversary possession upon this; and therefore the jury were to disregard all the parol testimony introduced by the plaintiffs in ejectment to prove their right to the land not embraced by the deed from Mead to Dudley, which was the very matter in controversy. But that notwithstanding the supposed evidence of adversary possession on the part of G-win Dudley was thus stricken out of the case and to be disregarded, yet still, if the jury should believe that Dudley and those claiming under him had taken and held adversary possession of the land in controversy for twenty years and upwards before the bringing of the suit, and that Mead and those claiming under him had acquiesced in such possession, then they ought to find for the plaintiffs in ejectment. Now I can perceive no ground whatever on which such an instruction can be sustained. If it can by any mode of interpretation be relieved of the obvious objection of repugnancy upon its face, yet viewed in the most favorable light, it must be regarded as an instruction upon a supposed state of facts which nowhere exists in the case; the only evidence tending to prove such a state of facts having been expressly repudiated by the court in its instruction in conformity to the opinion of this court upon the very question certified to the former in its judgment granting the new trial. And although *243 it may be true, a court will not look with very-extreme nicety into the evidence to determine whether there be any evidence tending to prove the hypothetical case supposed in the instruction, nor will examine any such evidence that may be found with a view to ascertain its weight or sufficiency, yet where, as in the present case, it is apparent there is no evidence tending to prove the case supposed, the instruction asked for ought not to be given. Wiley v. Givens, 6 Gratt. 277.
The counsel for the defendants in error, however, insists that although in such a case the instruction asked for being upon an abstract proposition not arising on the evidence, may well be refused by the court, yet if the court shall waive this objection and give the instruction, it would not be such error as would occasion a reversal of the judgment. And in the case of Preston v. Harvey, 2 Hen. & Munf. 55, it is said that this court does not sit to reverse judgments for erroneous opinions on mere abstract or immaterial questions; and that judgment should not be reversed for an erroneous decision unless some injury could possibly have resulted therefrom to the party appealing. But where an instruction is given which may serve to mislead the jury upon a question material to the cause, the reason for reversing the judgment is as strong as it can be in the case of any erroneous decision whatever. In Lee v. Tapscott, 2 Wash. 276, it is held that improper testimony, however unimportant it may be to the cause, ought never to be confided to the jury; for if it should have an influence on their minds, it will mislead them ; and if it should have none, it is useless and may at least produce perplexity. And in Poindexter v. Davis, 6 Gratt. 481, it is held that if improper testimony be suffered to go to the jury, the judgment must be reversed, although there might be other and unexceptionable evidence as to the same faet before the' jury. And certainly the objection to an irrelevant and *244 improper instruction by the court to the jury cannot be less strong than that to the admission of irrelevant and improper testimony.
• In this case I think there is little doubt that the modification appended by the court to the instructions asked by the plaintiff in error might and did mislead the jury upon a question vital in the cause, and that without it they would certainly not have rendered such a verdict. It will be observed that when the case was before this court upon the supersedeas to the former judgment, the Circuit court having in the bill of exceptions certified the evidence given on the former trial, and not the facts which it proved, this court, according to its settled rule, in passing on the question of a new trial, could only consider the documentary testimony read to the jury and the parol testimony on the part of the defendants in error, rejecting entirely the parol testimony on the part of the plaintiff in error. But notwithstanding .this exclusion of all the parol testimony on the part of the latter, this court was of opinion that the evidence of the defendants in error had failed to make out a sufficient adversary possession of the land in controversy to enable them to sustain their action. And all this was certified in its judgment to the Circuit court. Yet when the case went back to that court, at the second trial, upon the same testimony on the part of the defendants in error, not in any respect strengthened or improved, but on the contrary certainly to some extent impaired and weakened by the conflicting testimony on the part of the plaintiff, which was fully before the jury for their consideration, the court, by the modification appended to the instructions, tells the jury that if they were satisfied from the evidence that there had been such adversary possession as that claimed on the part of the defendants in error, then they ought to find a verdict in their favor; thus in effect giving them to understand *245 that although this court, looking to the evidence of the defendants in error exclusively, had held that it did not make out a case of adversary possession, yet that they upon the second trial, considering the same testimony, impaired and weakened as it was to some extent by the countervailing testimony on the part of the plaintiff in error, might disregard the opinion of the Court of appeals; and if they thought the testimony sufficient • to make out a case of adversary possession, they might so find, and render their verdict for the plaintiffs in ejectment accordingly.
I think it is plain that under the opinion of this court upon the former hearing and upon the state of the evidence given at the second trial, the plaintiff in error was entitled to the instructions asked for by him without any such modification as that appended by the court; and that the Circuit court clearly erred in so much of its instruction as was embraced in that modification. I am therefore of opinion to reverse the judgment, set aside the verdict, and remand the cause to the Circuit court, that a new trial may be had, upon whieh, if the evidence shall be substantially the same as before, and the plaintiff in error shall ask for the same instructions as upon the last trial, they are to be given without any such modification as that appended to them upon the former trial.
The other judges concurred in the opinion of .1.
Judgment reversed.